IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARLENE K. KING, | ) | CASE NO. 1:07 CV 441 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Darlene K. King, for supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that King had severe impairments consisting of obesity, diabetic neuropathy, osteoarthritis of both knees status post arthroscopic surgery of the right, amblyopia, chronic obstructive pulmonary disease, sleep apnea, depression, and an anxiety disorder.[1] The ALJ made the following residual functional capacity finding:

> Ms. King retains the residual functional capacity to do a range of sedentary work (20 C.F.R. §§ 404.1567, 416.967). Specifically, she can lift, carry, push and/or pull a maximum of 10 pounds, can sit for 6 hours and can stand and/or walk for 2 hours in an 8-hour day with normal breaks. She can never use ladders, ropes or scaffolds. She is precluded from tasks requiring binocular vision or depth perception. She must avoid all exposure to workplace hazards.

---

[1] Transcript ("Tr.") at 414.

> She must avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas, and to temperature extremes. She is precluded from occupational driving. She is limited to simple, routine, low-stress tasks.

Given that residual functional capacity, the ALJ found King unable to perform her past relevant work.[2]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the residual functional capacity quoted above, the ALJ decided that a significant number of jobs existed locally and nationally that King could perform.[3] The ALJ, therefore, found King not under a disability.[4]

King asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, King asserts five issues for decision in this case:

- Whether the ALJ erred in failing to take into consideration claimant's documented mental limitations in finding that she retained the ability to perform sedentary level jobs requiring a reasoning level of "2" or "3."

- Whether the ALJ erred in violating SSR 00-4p which requires an ALJ to inquire of the VE a reasonable explanation for conflict between VE testimony and the DOT.

- Whether the ALJ erred in violating the "law of the case doctrine."

- Whether the ALJ erred in failing to make a specific and thorough credibility determination as required by law and SSR 96-7p.

---

[2] *Id.*

[3] *Id.*

[4] *Id.*

- Whether the ALJ erred in failing to evaluate the claimant's complaints of pain and numbness as required by *Duncan v. Secretary of Health and Human Services*.

I conclude that substantial evidence does not support the finding that King could perform a significant number of jobs that existed locally or nationally. As discussed below, the testimony of the vocational expert was either inconsistent with the *Dictionary of Occupational Titles* or such that it cannot be determined on this record if his testimony was consistent with that source. I will recommend, therefore, the remand of this case for reconsideration of the finding that a significant number of jobs existed locally or nationally that King could perform. I will also recommend, in the event of remand, that the ALJ specifically address headaches as a source of limitation on King's work-related capabilities, as directed by Magistrate Judge Gallas in the first judicial review, and that the ALJ provide a more detailed articulation as to credibility.

**Analysis**

**1. Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[5]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**2.      The ALJ's treatment of the vocational expert's testimony**

King argues that substantial evidence does not support the ALJ's finding that a significant number of jobs existed locally or nationally that she could perform. In support of this argument she posits that the vocational expert's ("VE") testimony was inconsistent with the *Dictionary of Occupational Titles* ("DOT") and that the ALJ failed to address and resolve these inconsistencies, as required by the agency's ruling.

In response to the ALJ's hypothetical; which incorporated limitations to simple, repetitive, low stress tasks; the VE identified assembler of electronic parts (DOT 723.687-010), charge account clerk (DOT 205.367-014), and document preparer (DOT 249.587-014) as jobs existing nationally and locally in significant numbers that King could perform.[6] The ALJ did not ask the VE if his testimony was consistent with the DOT.[7]

---

[5] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[6] Tr. at 908.

[7] *Id.* at 905-13.

The ALJ found that King could perform all three of the jobs identified by the VE and that these jobs existed in significant numbers nationally and locally.[8] The ALJ observed that the VE testified consistent with the DOT even though the ALJ has asked the VE no questions about such consistency.[9]

Social Security Ruling (SSR) 00-4p[10] requires an ALJ who takes testimony from a vocational expert about the requirements of a particular job to determine whether that testimony is consistent with the DOT. The ruling's language expressly sets out the ALJ's affirmative duty:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator *has an affirmative responsibility* to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> • Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> • If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.[11]

---

[8] *Id.* at 412, 413.

[9] *Id.* at 412.

[10] SSR 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information In Disability Decisions, *available at* http://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html.

[11] *Id.*

Here, despite a recitation in the decision that the VE's testimony was consistent with the DOT,[12] the ALJ did not inquire about such consistency during the hearing.[13] The ALJ defaulted on the affirmative obligation imposed by the ruling.

The Commissioner seeks to have that default excused on two grounds. First, the Commissioner argues that King waived that default because her counsel did not ask the VE about inconsistencies at the hearing. But as the Seventh Circuit reasoned in *Prochaska v. Barnhart*,[14] because the ruling imposes an affirmative duty on the ALJ to inquire, the claimant does not waive the defect by not raising it at the hearing.[15] This is particularly so at step 5 of the sequential evaluation process where the Commissioner, not the claimant, bears the burden of proof.[16]

Second, the Commissioner posits that harmless error can excuse the ALJ's duty to inquire about inconsistencies when in fact the VE's testimony does not conflict with the DOT. This harmless error defense is well recognized.[17] The Commissioner maintains that in fact the VE's testimony here is consistent with the DOT.

---

[12] Tr. at 412.

[13] *Id*. at 905-13.

[14] *Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006).

[15] *Id.* at 735.

[16] *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 545 (6th Cir. 2007).

[17] *Prochaska*, 454 F.3d at 736; *Masters v. Astrue*, No. 07-123-JBC, 2008 WL 4082965, at *2 (E.D. Ky. Aug. 29, 2008); *Kelly v. Comm'r of Soc. Sec.*, No. 07-11824, 2008 WL 2950106, at *6 (E.D. Mich. July 31, 2008).

King counters that the jobs identified by the VE as suitable for her are not because the general educational development ("GED")[18] rating given by the DOT are beyond her capabilities. The jobs that the ALJ found King capable of doing, and the GED ratings for each, are as follows:

- Document preparer          DOT 249.587-014     GED R2[19]

- Assembler of electrical parts    DOT 723.787-010[20]    GED R2[21]

- Charge account clerk        DOT 205.367-014     GED R3[22]

Specifically, King submits that, under the ALJ's residual functional capacity finding and the hypothetical to the VE, she cannot do a job with a GED rating in excess of R1.

Although there is some authority supporting the position that a limitation to simple repetitive tasks eliminates any job with a GED rating of above R1, the majority of cases reject such a bright line rule. The best explanation for rejecting such a rule is set forth in the decision in *Meissl v. Barnhart*, out of the Central District of California, wherein the court

---

[18] General educational development "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT Appendix C.

[19] 1 DOT at 219 (4th ed. 1991).

[20] This number does not exist in the DOT. The VE gave the number as 723.687-010 (Patcher). From the description, it appeasr that this job involves some assembly of electrical parts.

[21] 2 DOT at 725-26 (4th ed. 1991).

[22] 1 DOT at 174-75 (4th ed. 1991).

explained that a limitation to simple routine tasks does not necessarily equate with the DOT's GED R1 rating that encompasses the ability to perform simple one or two-step instructions:

> A job with a reasoning level of two requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and deal with problems "involving a few concrete variables ...." DOT at 1011. Thus, such a job would involve more detail, as well as a few more variables, than that with a reasoning level of one. The question becomes whether a person limited to carrying out simple, repetitive instructions could still perform a job with such a reasoning score.
>
> Meissl focuses on the fact that the DOT description for a reasoning level of 2 uses the word "detailed." Essentially, Meissl seeks to equate the DOT's use of the word "detailed" with the Social Security regulations' use of the word "detailed instructions" in formulating a claimant's mental RFC. The Court is not convinced that such a neat, one-to-one parallel exists between the two.
>
> The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); *see also*, 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking ... apprehend the most abstruse classes of concepts" at level six). DOT at 1010-1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.
>
> Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

-8-

Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."

The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one. A reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required. For example, the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling-Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans). *See* DOT at 931, 936, 938. Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed. Other courts have so held. *See*, *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart,* 91 Fed. Appx. 210, 214, 2004 WL 362291, at *3 (3rd Cir. 2004), "Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"). As one court explained:

> The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved – that is, not a high level of reasoning.

*Flaherty v. Halter*, 182 F. Supp. 2d 824, 850 (D. Minn. 2001).[23]

---

[23] *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983-85 (C.D. Cal. 2005).

A number of courts, including two courts of appeals, have found on the facts presented compatibility between a limitation to simple repetitive tasks and a GED R2 rating.[24]

Within this circuit, the Eastern District of Kentucky recently rejected the position that a limitation to simple repetitive tasks precludes a claimant from jobs with a GED rating of R2 and that VE testimony identifying such jobs as existing for a person with such a limitation creates an inconsistency with the DOT under SSR 00-4p.[25]

I also reject, however, the Commissioner's position that the GED rating has no relevance to the inquiry about whether a person with a given residual functional capacity can perform a particular job as defined by the DOT. The DOT description for each job sets out the minimum capabilities required mentally and physically to perform that job. One of those capabilities is reflected in the GED rating. The ALJ has the job of setting the parameters for the claimant's work-related capabilities in the form of the residual functional capacity finding. At step 5 of the sequential evaluation process, the ALJ may obtain the assistance of a VE in identifying jobs that the claimant, given his or her residual functional capacity, can perform. The prevailing framework for making this match is the DOT. Given his or her expertise, the VE offers an opinion of whether the claimant with a specific residual functional capacity can perform particular jobs, whose minimum mental and physical requirements are

---

[24] *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (11th Cir. 2005); *Money v. Barnhart*, 91 F. App'x 210, 214-15 (3d Cir. 2004); *Adams v. Astrue*, No. CV07-1248, 2008 WL 2812835, at *3 (W.D. La. June 30, 2008); *Cooper v. Barnhart*, No. 04-222-P-S, 2005 WL 1231496, at *3 (D. Me. May 24, 2005).

[25] *Masters*, 2008 WL 4082965, at *3.

-10-

set by the DOT.[26] The GED rating provides part of that statement of the job's requirements. Where the DOT's requirements do not align with the residual functional capacity, or if it cannot be determined from the record that the DOT's requirements and the residual functional capacity are consistent, the ALJ has a duty to inquire further.[27]

Even though I reject King's bright line rule argument, that does not resolve the matter on the record in this case. The ALJ adopted a limitation to simple repetitive tasks **and low stress work.**[28] He incorporated that limitation in his hypothetical to the VE.[29] As already stated, the case law does support the position that the R2 rating is consistent with a limitation to simple repetitive tasks. The additional limitation to low stress work may take King's capabilities outside of GED R2, however.

In *Stine v. Commissioner of Social Security*, the Eastern District of Michigan recently reversed a no disability decision on the grounds of failure to address inconsistency with the DOT under SSR 00-4 where the limitation adopted included no fixed or rigid production demands, a limitation similar to low stress work.[30] Given that limitation, the court held that it could not determine on the record if the jobs identified by the VE, all of which had a GED

---

[26] *See, e.g.*, *Drossman v. Comm'r of Soc. Sec.*, No. 3:07cv376, 2008 WL 1848202, at *5 (N.D. Ohio Apr. 17, 2008).

[27] *Prochaska*, 454 F.3d at 735.

[28] Tr. at 413.

[29] *Id.* at 907.

[30] *Stine v. Comm'r of Soc. Sec.*, No. 07-12301, 2008 WL 1837357 (E.D. Mich. Apr. 23, 2008).

-11-

rating of R2, were ones the claimant could do.[31] Because the ALJ had defaulted on his obligation to inquire about such inconsistencies on the record, the court remanded the case.

Here the GED rating of R3 eliminates the charge account clerk position identified by the ALJ and the VE. The ALJ's finding at step 5 hangs on the other two jobs identified, which have a GED rating of R2. Although King could do these jobs consistent with the DOT if she was merely limited to simple repetitive work, it cannot be determined from the record if she can do them with the additional limitation to low stress work.[32] Having failed to inquire of the VE about consistency of his testimony with the DOT in this regard, this alternative finding lacks the support of substantial evidence. This case should be remanded at least on this narrow point.

**3.    The ALJ's treatment of complaints of headaches**

In remanding this case for further proceedings on initial judicial review, Magistrate Judge Gallas directed the ALJ to address evidence of headaches.[33]

Although the ALJ makes reference to King's testimony about headaches at the administrative hearing in his decision,[34] he did not otherwise discuss headaches. As the

---

[31] *Id.*, at *5.

[32] Other than the *Stine* decision, I have found no authority analyzing a limitation to low stress work in the context of a GED rating of R2. The R2 rating incorporates the ability to deal with problems involving a few concrete variables in or from standardized situations. DOT, Appendix C. It may well be that a person limited to low stress work would possess that ability. But, in the context of this record, that is a subject of further inquiry with the VE.

[33] Tr. at 445.

[34] *Id.* at 423.

-12-

Commissioner concedes, there is some evidence of complaints of headaches and medication prescribed therefor.[35]

Although technically the ALJ should have specifically addressed headaches in his decision, I am unable to find any basis for imposing limitations greater than those incorporated into the residual functional capacity finding to address such headaches. In reviewing the records of King's treating physician, Harris Freedman, D.O., I can find no significant references to headaches outside of the period from December, 1999, to February, 2000.[36] In various functional assessments done by Dr. Freedman, headaches are not listed as an impairment, and I can find no limitations attributable to headaches. Furthermore, when asked at oral argument regarding medical evidence of the cause of headaches, counsel for King could point to none.

If this case is remanded, the ALJ should, in light of Judge Gallas's directive, address headaches and state specifically whether that impairment imposed any additional limitations on King's work-related capabilities. On this record, however, I do not see the ALJ's failure to deal more specifically with headaches as a cause for remand.

---

[35] ECF # 20 at 14-15.

[36] *E.g.*, Tr. at 146, 249.

**4.     The ALJ's treatment of credibility**

When a claimant presents pain as the cause of disability, the decision of the Sixth Circuit in *Duncan v. Secretary of Health and Human Services*[37] provides the proper analytical framework. The court in *Duncan* established the following test:

> [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.[38]

Under the first prong of this test, the claimant must prove by objective medical evidence the existence of a medical condition as the cause for the pain. Once the claimant has identified that condition, then under the second prong he or she must satisfy one of two alternative tests – either that objective medical evidence confirms the severity of the alleged pain or that the medical condition is of such severity that the alleged pain can be reasonably expected to occur.[39]

Objective medical evidence of pain includes evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption.[40] The determination of whether the condition is so severe that the alleged pain is reasonably expected to occur hinges on the assessment

---

[37] *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986).

[38] *Duncan*, 801 F.2d at 853.

[39] *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994).

[40] *Id.* at 1037 (quoting 20 C.F.R. § 404.1529(c)(2)).

of the condition by medical professionals.[41] Both alternative tests focus on the claimant's "alleged pain."[42] Although the cases are not always clear on this point, this standard requires the ALJ to assume arguendo pain of the severity alleged by the claimant and then determine if objective medical evidence confirms that severity or if the medical condition is so bad that such severity can reasonably be expected.

A claimant's failure to meet the *Duncan* standard does not necessarily end the inquiry, however. As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[43] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[44]

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and

---

[41] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

[42] *Duncan*, 801 F.2d at 853.

[43] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

[44] *Id.* at 34484.

-15-

persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements.[45]

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[46]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[47] The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[48] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.[49]

---

[45] 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

[46] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

[47] *Cross*, 373 F. Supp. 2d at 732.

[48] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[49] *Cross*, 373 F. Supp. 2d at 732.

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof might justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[50] A court may not disturb the ALJ's credibility determination absent compelling reason.[51]

An ALJ in a unified statement should express whether he or she accepts the claimant's allegations as credible and, if not, explain the finding in terms of the factors set forth in the regulation.[52] If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[53] The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she

---

[50] *Buxton*, 246 F.3d at 773.

[51] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[52] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[53] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

-17-

considered all relevant evidence.[54] The articulation should not be conclusory;[55] it should be specific enough to permit the court to trace the path of the ALJ's reasoning.[56]

I do not find insufficient the ALJ's *Duncan* analysis on the record in this case. The Commissioner does not dispute that King has medical impairments that can cause pain, satisfying the first prong of the *Duncan* test. The ALJ acknowledges under the first alternative test of the *Duncan* prong that King's impairments, and the pain caused thereby, do manifest in physical limitations. As to the second alternative test, whether her condition is so severe that the alleged pain is reasonably expected to occur, the ALJ has adequately reviewed and evaluated the objective medical tests and the opinions of the physicians. Based on that review, he did assign King a much diminished residual functional capacity. The *Duncan* analysis, therefore, does not justify setting aside the ALJ's findings.

The ALJ found that King's assertions of her limitations are credible to the extent of his residual functional capacity finding.[57] The ALJ did not offer a unified statement as to credibility but does discuss at various points her daily activities[58] and the absence of side effects from medication that would affect her ability to work at the sedentary level.[59]

---

[54] *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1054 (E.D. Wisc. 2005).

[55] SSR 96-7p, 61 Fed. Reg. at 34384.

[56] *Blom*, 363 F. Supp. 2d at 1054.

[57] Tr. at 413.

[58] *Id.* at 409, 410.

[59] *Id.* at 410.

Arguably this minimal articulation, in combination with the ALJ's more thorough treatment of the objective medical evidence, may suffice to meet the substantial evidence standard. If this case is remanded, however, I recommend that the ALJ be directed to provide a more thorough and unified analysis on credibility in light of the standards set forth in the agency's regulations.

## Conclusion

Based on the foregoing analysis, I recommend the reversal of the decision of the Commissioner denying King's application for supplemental security income and the remand of the decision for reconsideration of whether a significant number of jobs exists locally and nationally that King could perform.

Dated: February 27, 2009                              s/ William H. Baughman, Jr.
                                                      United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[60]

---

[60] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).